UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at LONDON)

CHARLES GRAY,

Plaintiff,

v.

UNITED STATES OF AMERICA, *et al.*,

Defendants.

Civil Action No. 6:25-CV-233-CHB

**MEMORANDUM OPINION AND ORDER**

*** *** *** ***

Federal inmate Charles Gray filed a *pro se* E.D. Ky. 520 Civil Rights Complaint Form, asserting claims against several defendants under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"). [R. 1]. The United States Attorney's Office for the Eastern District of Kentucky entered an appearance on behalf of the Defendants and filed a motion to dismiss Gray's claims against them. [R. 24]. Because the defendants tendered a declaration from a federal prison official, as well as multiple exhaustion-related documents, [R. 24-1], the Court converted their motion into one for summary judgment under Federal Rule of Civil Procedure 56, [R. 25, pp. 1–2 (citing Fed. R. Civ. P. 12(d))]. Gray then filed a response, [R. 29], and the defendants filed a reply, [R. 30]. The defendants' motion for summary judgment is thus ripe for the Court's review. For the reasons set forth below, the Court will grant the motion in part, deny it in part, and refer this matter to a United States Magistrate Judge for further proceedings.

## I. BACKGROUND

Gray complains about events that allegedly occurred in May 2024, while he was incarcerated at the United States Penitentiary, McCreary ("USP McCreary"), in Pine Knot, Kentucky. *See* [R. 1, pp. 1–3]. Gray alleges that, after a female prison staff member lodged an incident report against him, Defendant M. Thomas, a lieutenant, and another individual "beat [Gray] all the way to the ground" and were "pulling, punching, [and] kicking [him] all over." *Id.* at 2. Gray alleges that he was then "defenseless" and that more officers arrived on the scene and began "to physically assault [him] for 5 to 7 min[utes]," including "hit[ting] [him] with a baton." *Id.* Gray also says that he was put in restraints that were so tight that he could not move and that left chain marks all over his body. *Id.* at 2–3. Gray alleges that prison officials then "c[a]me in every 15 min[utes] to do a check and . . . beat[] [him] with a shield." *Id.* at 3. Gray also alleges that Defendant B. Perry, a nurse, "did nothing to stop them and was helping to restrain [Gray] to the bed." *Id.* Finally, Gray says that he later "had to swallow a razor and go to a[n] outside hospital to have them document my chain marks because B. Perry was declining medical attention." *Id.* Gray suggests that "the whole thing was caught on camera" and that another prison official later told Gray that he had "seen the video footage and [was] sorry this happened to [Gray]." *Id.* at 2–3.

Gray indicates that he pursued at least some administrative remedies. Specifically, Gray says that he filed a BP-9 Form with Defendant Lovett, the warden of USP McCreary, *id.* at 3, and Gray checked a box on his complaint form indicating that he also filed an appeal with a Regional Director of the federal Bureau of Prisons ("BOP"), *id.* at 4. Gray alleges, however, that "corruption was being used to stop [him] from filing anything" and that prison officials were "tampered with [his] mail." *Id.* at 3. Gray accuses Warden Lovett of failing to properly investigate the matter, and

he further accuses the prison staff of misconduct and corruption generally, asserting that "beatings are normal at this prison." *Id.*

Gray names Lieutenant Thomas, Warden Lovett, and Nurse Perry as Defendants in his complaint, and he appears to assert a variety of *Bivens* claims against them. *See id.* at 1–4. As best as the Court can tell, Gray is trying to pursue multiple Eighth Amendment claims by stating that Lieutenant Thomas used excessive force against him, Warden Lovett failed to protect him, and Nurse Perry displayed a deliberate indifference to his serious medical needs. *See id.* Gray also suggests that these (and/or other) federal officials violated his constitutional rights by falsifying documents, engaging in corruption and misconduct, abusing their power, engaging in racism, harassing him, manipulating other staff, falsely imprisoning him, and tampering with evidence. *See id.* at 4. Gray also appears to be pursuing claims against the United States of America under the FTCA. *See id.* at 4–5. For relief, Gray requests millions of dollars in damages. *Id.* at 8.

In their present motion, the defendants seek dismissal of each of Gray's various claims against them. [R. 24]. As noted above, that motion is now fully briefed and ripe for the Court's review. *See* [R. 29]; [R. 30].

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 if the Court find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Winkler v. Madison County*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. DISCUSSION

### A. FTCA Claim Against the United States

The Court will first enter judgment for the United States on the FTCA claim that Gray appears to raise, because any such claim is untimely. Evidence in the record demonstrates that Gray pursued a tort claim administratively by filing a form with the BOP. [R. 24-1, pp. 5–10]. On June 12, 2025, the BOP sent Gray a letter denying his administrative tort claim and informing him that if he was not satisfied with its determination, he could "file suit in the appropriate U.S. District Court no later than six months from the date of this letter." *Id.* at 15. That statement accurately reflects 28 U.S.C. § 2401(b), which provides that "[a] tort claim against the United States shall be forever barred . . . unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." Gray thus had until December 12, 2025, to file his complaint in federal court. However, Gray did not file his complaint in this case until December 29, 2025, seventeen days after the six-month deadline established by § 2401(b). *See* [R. 1]. Accordingly, Gray's FTCA claim against the United States is untimely.

Gray nevertheless argues in his response that "December 29th is still with[in] . . . 6 months of filing to District Court." [R. 29, p. 2]. But that is simply not the case. And although Gray briefly alleges that prison officials tampered with his mail, [R. 1, p. 3], he does not elaborate on that statement or otherwise explain how he was prevented from completing and timely filing his complaint. Moreover, even if the Court considered Gray's complaint to be filed on the date that he signed it—December 16, 2025—it would still be four days too late. *See* [R. 1, p. 8]. Thus, Gray's FTCA claim is time barred, and the Court will enter judgment for the United States on that claim.

### B. Civil Rights Claims Against the Individual Defendants, Except for the Deliberate Indifference Claim Against Nurse Perry

The Court will also enter judgment for the defendants on each of Gray's *Bivens* claims, except for the deliberate indifference claim against Nurse Perry. Again, Gray appears to claim that Lieutenant Thomas used excessive force against him and that Warden Lovett failed to protect him, each in violation of Gray's rights under the Eighth Amendment. *See* [R. 1, pp. 1–4]. Gray also suggests that these (and/or other) federal officials violated his constitutional rights by falsifying documents, engaging in corruption and misconduct, abusing their power, engaging in racism, harassing him, manipulating other staff, falsely imprisoning him, and tampering with evidence. *See id.* at 4. However, because each of these claims reflects a new context for a *Bivens* claim, and because there are special factors advising against expanding the *Bivens* remedy to these contexts, Gray's *Bivens* claims, except for the deliberate indifference claim against Nurse Perry, fail as a matter of law.

In *Bivens*, the Supreme Court held that an individual may "recover money damages for any injuries . . . suffered as a result of [federal] agents' violation of" his constitutional rights. *Bivens*, 403 U.S. at 397. The Court has since made clear, however, that the judicially created *Bivens* cause of action is available in only limited circumstances. *See, e.g.*, *Ziglar v. Abbasi*, 582 U.S. 120, 130–37 (2017). Indeed, including *Bivens* itself, the Court has approved of an implied damages remedy under the Constitution in only three circumstances: (1) where federal officials searched a private residence without probable cause in violation of the Fourth Amendment, *Bivens*, 403 U.S. at 389, 397; (2) where a Congressperson terminated an employee on the basis of gender in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 230, 248 (1979); and (3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 16–18 (1980). *See Ziglar*, 582 U.S. at 131.

Since *Carlson* was decided over forty years ago, the Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). Thus, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them." *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020). Indeed, the Supreme Court has stated plainly that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 582 U.S. at 135 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

Under *Ziglar*, the Court must employ a two-step test to determine if *Bivens* provides a remedy for alleged misconduct by federal officials. *Hernandez*, 140 S. Ct. at 743. First, the Court must decide if the plaintiff's claim "arises in a 'new context' or involves a 'new category of defendants,'" relative to previously recognized *Bivens* claims. *Id.* (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). The Court's understanding of a "new context" must be broad, and the Court must "regard a context as 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court].'" *Id.* (quoting *Ziglar*, 582 U.S. at 139). Meaningful differences include, for example,

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139–40.

If a claim arises in a new context, the Court must then consider whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 136 (quoting *Carlson*, 446 U.S. at 18). Although the Supreme Court has not created an exhaustive list of special factors, it has made clear that "separation-of-powers principles" are "central to [this] analysis."

*Hernandez*, 140 S. Ct. at 743 (alteration in original) (quoting *Ziglar*, 582 U.S. at 135). Thus, the Court must consider whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy" and whether "the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* (quoting *Ziglar*, 582 U.S. at 136–37).

In sum, the two-part test set out by the Supreme Court is "exacting," and the answer to the question of whether the Court "should engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action . . . will almost always be never." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021), *reh'g denied*, No. 20-1339, 2022 WL 326693 (6th Cir. Jan. 25, 2022).

Here, setting aside Gray's deliberate indifference claim against Nurse Perry, each of his claims clearly arises in a new *Bivens* context. In fact, the Supreme Court and the Sixth Circuit have specifically declined to extend *Bivens* to Eighth Amendment excessive force claims similar to Gray's claim against Lieutenant Thomas. *See Goldey v. Fields*, 145 S. Ct. 2613, 2614–15 (2025); *Anderson v. Fuson*, No. 23-5342, 2024 WL 1697766, at *1–3 (6th Cir. Feb. 1, 2024). The Sixth Circuit has likewise made clear that failure to protect claims, like the one Gray lodges against Warden Lovett, "are not cognizable under *Bivens*." *Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *3 (6th Cir. Sep. 13, 2022). And Gray's various other claims—related to alleged falsification of documents, corruption, misconduct, abuse of power, racism, harassment, manipulation of staff, false imprisonment, and evidence tampering—are plainly different from those previously recognized as cognizable.

In light of the foregoing, the Court must proceed to the second step of the analysis and determine whether there are special factors that counsel against extending the *Bivens* remedy to these new contexts. *See Hernandez*, 140 S. Ct. at 743. The Supreme Court has cautioned that "[i]f

there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (quoting *Hernandez*, 140 S. Ct. at 743).

There are multiple reasons to pause before applying *Bivens* here. For one, Congress has "enacted the Prison Litigation Reform Act, which 'does not provide for a standalone damages remedy against federal jailers.'" *Anderson*, 2024 WL 1697766, at *3 (quoting *Callahan*, 965 F.3d at 524). "[T]his suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id.* (alteration in original) (quoting *Ziglar*, 582 U.S. at 149). Moreover, federal prisoners have an alternative means to vindicate their constitutional rights: the BOP's administrative remedy process remains a ready and viable mechanism to challenge alleged staff misconduct. *See, e.g.*, *id.* (citing *Malesko*, 534 U.S. at 74); *see also id.* ("We have recognized that the BOP's inmate grievance process 'is substantial' in that 'it contains its own statutes of limitations, filing procedures, and appeals process' and allows for prisoners to retain counsel to assist with the process." (quoting *Callahan*, 965 F.3d at 524)). In short, multiple factors counsel against implying a *Bivens* remedy on the foregoing claims, and the Court will therefore enter judgment for the defendants on those claims.

### C. Deliberate Indifference Claim Against Nurse Perry

That leaves Gray's Eighth Amendment claim against Nurse Perry for alleged deliberate indifference to serious medical needs. Nurse Perry argues that this claim is untimely, not cognizable under *Bivens*, and that, in any event, Gray has failed to state a viable claim under the Eighth Amendment. *See* [R. 24, pp. 1–2, 6–16]. These arguments, however, are at best premature.

Based on the current limited record, the Court cannot determine whether Gray's Eighth Amendment claim is timely. Nurse Perry reasons that Gray's claim would have accrued in May

2024, when the alleged events occurred. [R. 24, pp. 2]. And because *Bivens* claims in Kentucky are subject to a one-year statute of limitations, *see, e.g.*, *Boswell v. United States*, No. 23-cv-066, 2024 WL 140431, at *3 (E.D. Ky. Jan. 12, 2024) (citing *Mitchell v. Chapman*, 343 F.3d 822, 825 (6th Cir. 2003)), Nurse Perry argues that Gray's complaint, filed in December 2025, was untimely. [R. 24, pp. 1–2].

The Court notes, however, the statute of limitations for Gray's claim would have been tolled while he pursued any administrative remedies. *See, e.g.*, *Petty v. Rush*, No. 08-CV-159, 2010 WL 1796573, at *7 (E.D. Ky. May 4, 2010) (citing *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000)). Gray alleges in his complaint that he pursued at least some administrative remedies with the BOP, albeit to no avail. [R. 1, pp. 3–4]. But it is not clear from Gray's complaint exactly how much time should be tolled while he was or attempting to exhaust his administrative remedies. And given the limited record before the Court, including the lack of all prison administrative remedy records, the Court cannot yet determine the precise length of the relevant tolling period.

The Court also cannot yet determine whether Gray's deliberate indifference claim is cognizable under *Bivens*. Nurse Perry acknowledges that, in *Carlson*, the Supreme Court recognized a *Bivens* claim for deliberate indifference to a serious medical need in a prison. [R. 24, p. 7]. Nurse Perry, however, argues that "this case is meaningfully different from *Carlson*." *Id.* That may or may not be true, but this Court cannot yet adequately compare Gray's deliberate indifference claim with the deliberate indifference claim asserted in *Carlson*. After all, the current pre-discovery record is quite limited, and the Court simply does not have a developed picture of Gray's need for medical treatment and Nurse Perry's corresponding response.

Similarly, the Court cannot yet determine whether Gray has established a deliberate indifference claim under the Eighth Amendment. Because the Defendants' motion has been

converted into one for summary judgment, *see* [R. 25, pp. 1–2 (citing Fed. R. Civ. P. 12(d))], the Court must determine whether there is a genuine dispute as to any material fact, *see, e.g.*, *Winkler*, 893 F.3d at 890 (citing Fed. R. Civ. P. 56(a)). Gray alleged in his complaint that he was left in a condition where he could not move, had chain marks all over his body, and felt compelled to swallow a razor so that he could be seen at an outside hospital. [R. 1, pp. 2–3]. Gray also alleged that Nurse Perry "did nothing to stop" the other prison officials, helped restrain him, and "was declining medical attention." *Id.* at 3. Still, the parties have not engaged in any discovery whatsoever, and, without a more fully developed record, the Court cannot discern whether there is sufficient evidence to verify Gray's allegations and prove up the objective and subjective prongs of a deliberate indifference to serious medical needs claim. *See, e.g.*, *Comstock v. McCrary*, 273 F.3d 693, 702–03 (6th Cir. 2001) (describing the elements of an Eighth Amendment deliberate indifference claim). As the Sixth Circuit has explained, summary judgment prior to discovery is "not the norm," and the parties "should have the opportunity to develop and discover the evidence." *Moore v. Shelby County*, 718 F. App'x 315, 320 (6th Cir. 2017). Thus, the Court will allow Gray's Eighth Amendment deliberate indifference claim against Nurse Perry to proceed, at least for the time being.

## IV. CONCLUSION

For the reasons explained above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. The defendants' dispositive motion, **[R. 24]**, is **GRANTED IN PART and DENIED IN PART** as follows:

    a. The defendants' motion is **DENIED** with respect to Gray's claim for deliberate indifference to serious medical needs against Nurse Perry.

b. The Defendants' motion is **GRANTED** with respect to Gray's remaining civil rights claims and Gray's FTCA claim against the United States of America, and judgment is **ENTERED** for the defendants on those claims.

c. The Clerk of Court is **DIRECTED** to terminate all defendants from this action, except Nurse Perry.

2. Pursuant to 28 U.S.C. § 636(b), this matter is **REFERRED** to a United States Magistrate Judge to conduct all future pretrial proceedings, including overseeing the discovery process and preparing proposed findings of fact and recommendations on any dispositive motions.

3. The Clerk of this Court shall **ASSIGN** this matter to a United States Magistrate Judge pursuant to the Court's General Order No. 25-18.

This the 23rd day of November, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY